ORAL ARGUMENT NOT YET SCHEDULED

No. 26-1086

## IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

In re Central Maine Power Company *et al.*, Petitioners

## REPLY BRIEF OF THE INDICATED NETOS

Mary E. Grover
Colin Francis
EVERSOURCE ENERGY SERVICE CO.
247 Station Drive, SE100
Westwood, MA 02090
(781) 441-8696
mary.grover@eversource.com
colin.francis@eversource.com

Michelle S. Kallen
Richard L. Roberts
Shaun M. Boedicker
Karen Bruni
Michael Zschokke
STEPTOE LLP
1330 Connecticut Avenue NW
Washington, D.C.  20036
(202) 429-6415
MKallen@steptoe.com

*Counsel for Eversource Energy Service Company on behalf of The Connecticut Light and Power Company, NSTAR Electric Company, and Public Service Company of New Hampshire*

Noelle M. Kinsch
AVANGRID NETWORKS, INC.
80 State Street, 12th Floor
Albany, NY  122207
(518) 461-6984
noelle.kinsch@avangrid.com

Catherine McCarthy
BRACEWELL LLP
2001 M Street, NW
Washington, DC 20036
(202) 828-5839
cathy.mccarthy@bracewell.com

*Counsel for Central Maine Power
Company and The United
Illuminating Company*

May 22, 2026

TABLE OF CONTENTS

INTRODUCTION ....................................................................................1

I.    In A Constitutional And Statutory Scheme That Requires Prompt
      Action, FERC's Delay Created This Irreparable Harm..................2

      A.    Because The Public Interest Favors A Functioning Electric
            Grid, Utilities Are Irreparably Harmed When The
            Government Prevents Them From Fulfilling Their Public
            Service Obligation. ..............................................................3

      B.    FERC's Delay Created The Indicated NETOs' Irreparable
            Harm......................................................................................9

      C.    FERC's Response Demonstrates Its Failure To Abide By The
            Statutory Scheme................................................................10

II.   Only A Stay Preserves The Status Quo And Prevents Irreparable
      Harm................................................................................................12

III.  FERC Lacks The Authority To Order Retroactive Refunds.........13

      A.    *Emera Maine* Did Not Identify A Legal Error That Can Be
            "Corrected" By Retroactive Refunds...................................14

      B.    Even If There Was A Legal Error, The Refunds Go Beyond
            FERC's Authority To Correct It ..........................................15

      C.    No Other Authority Justifies The Refunds .........................16

IV.   Circuit Rule 18 Does Not Bar The Petition..................................17

# TABLE OF AUTHORITIES

### Cases

*Allegheny Def. Project v. FERC,*
964 F.3d 1 (D.C. Cir. 2020) (en banc) ..............................................2, 11

*Atlantic City Elec. Co. v. FERC,*
295 F.3d 1, 11 (D.C. Cir. 2002) ........................................................11

*Biden v. Knight First Amend. Inst. at Columbia Univ.,*
141 S. Ct. 1220 (mem) (2021) ............................................................3

*Bluefield Waterworks & Imp. Co. v. Pub. Serv. Comm'n of W. Va.,*
262 U.S. 679 (1923)............................................................................5

*Brush v. Commissioner,*
300 U.S. 352 (1937)............................................................................3

*Burlington Truck Lines, Inc. v. United States,*
371 U.S. 156 (1962)..........................................................................16

*Center for Biological Diversity v. U.S. Fish & Wildlife Serv.,*
146 F.4th 1144 (D.C. Cir. 2025)........................................................16

*City of Anaheim v. FERC,*
558 F.3d 521 (D.C. Cir. 2009) ..........................................................14

*Coinbase, Inc. v. SEC,*
126 F.4th 175 (3d Cir. 2025).............................................................11

*Ctr. for Food Safety v. Regan,*
56 F.4th 648 (9th Cir. 2022) .............................................................11

*Electrical Dist. No. 1 v. FERC,*
774 F.2d 490 (D.C. Cir. 1985) ..........................................................14

*Emera Maine v. FERC,*
854 F.3d 9 (D.C. Cir. 2017) ..........................................................9, 15

*FCC v. Fox TV Stations, Inc.,*
567 U.S. 239 (2012)..........................................................................11

*Fed. Power Comm'n v. Hope Nat. Gas Co.,*
320 U.S. 591 (1944)............................................................................5

*Garcia v. San Antonio Metro. Transit Auth.*,
  469 U.S. 528 (1985) ................................................................ 3

*In re Core Comm'ns, Inc.*,
  531 F.3d 849 (D.C. Cir. 2008) .................................. 9, 10, 11

*Maryland v. King*,
  567 U.S. 1301 (2012) ............................................................. 4

*MISO Transmission Owners v. FERC*,
  45 F.4th 248 (D.C. Cir. 2022) ............................................. 9

*Natural Res. Def. Council v. EPA*,
  489 F.3d 1250 (D.C. Cir. 2007) ......................................... 10

*Nken v. Holder*,
  556 U.S. 418 (2009) ............................................................ 12

*Office of Consumers' Couns., State of Ohio v. FERC*,
  826 F.2d 1136 (D.C. Cir. 1987) ......................................... 14

*PennEast Pipeline Co., LLC v. New Jersey*,
  594 U.S. 482 (2021) .............................................................. 4

*Primrose v. Western Union Telegraph Co.*,
  154 U.S. 1 (1894) .................................................................. 3

*Prometheus Radio Project v. FCC*,
  824 F.3d 33 (3d Cir. 2016) ................................................. 11

*Public Util. Comm'n of State of Cal. v. FERC*,
  988 F.2d 154 (D.C. Cir. 1993) ........................................... 15

*TNA Merch. Projects, Inc. v. FERC*,
  857 F.3d 354 (D.C. Cir. 2017) ........................................... 16

*Transmission Access Pol'y Grp. v. FERC*,
  225 F.3d 667 (D.C. Cir. 2000) ............................................. 4

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) .............................................................. 4

## Statutes

16 U.S.C. § 824(a) ..................................................................... 7

16 U.S.C. § 824e(a) .................................................................. 15

16 U.S.C. § 824e(b) .............................................................................7, 16

16 U.S.C. § 824p(e)(1) .............................................................................4

## Administrative Decisions

*Coakley v. Bangor Hydro-Elec. Co.*, Notice of Extension of Time,
  Docket Nos. EL11-66 (FERC Apr. 14, 2026) .......................................12

*Coakley v. Bangor Hydro-Elec. Co.*, Opinion No. 531,
  147 FERC ¶ 61,234 (2014) ....................................................................6

*Coakley v. Bangor Hydro-Elec. Co.*, Opinion No. 594,
  194 FERC ¶ 61,208 (2026) ....................................................................6

*Coakley v. Bangor Hydro-Elec. Co.*, Order Denying Mot. for Stay,
  195 FERC ¶ 61,108 (May 13, 2026) ....................................................12

## Rules

D.C. Cir. R. 18 .....................................................................................17

Fed. R. App. P. 18 ...............................................................................17

## Other Authorities

H.R. Rep. No. 100-384 (1987) ..................................................................8

Hearings on S. 1567 & H.R. 2858 (Nov. 18, 1987) ...................................8

*MISO Transmission Owners v. FERC*, Docket Nos. 25-1045 *et al.* .......16

## INTRODUCTION

After this Court's remand in *Emera Maine*, FERC waited nearly a decade to act. Then—invoking a contested theory of retroactive refund authority currently before this Court in *MISO*—the agency demanded that transmission owners in New England pay nearly *$1.5 billion* in retroactive refunds (over $1 billion attributable to the Indicated NETOs) in just 30 days. When the Indicated NETOS sought relief, FERC refused to timely act. Only after the Indicated NETOs petitioned this Court—12 days into the agency's 30-day clock—did FERC finally rule on their request for an extension, granting only partial relief insufficient to address the scope of the obligation. FERC then delayed again, waiting until two days before filing its brief to this Court (and 55 days after its original order) to rule on the motion to stay.

FERC could have easily avoided this confusion—and this proceeding—if it had acted in the prompt and predictable fashion required by the constitutional and statutory scheme governing the regulation of public utilities. It did not. So long as FERC retains unilateral control over this process, the risk of ongoing and compounding harm remains. This proceeding requires "judicial superintendence."

*Allegheny Def. Project v. FERC*, 964 F.3d 1, 17 (D.C. Cir. 2020) (en banc).

The Court's oversight is necessary to ensure that any refund process proceeds in an orderly and lawful manner while the Indicated NETOs pursue judicial review on the merits.

I.   IN A CONSTITUTIONAL AND STATUTORY SCHEME THAT REQUIRES PROMPT ACTION, FERC'S DELAY CREATED THIS IRREPARABLE HARM

FERC ignores the irreparable harm caused by requiring the Indicated NETOs to repay approximately a tenth of their return on equity (ROE) for over a decade. A billion-dollar refund obligation would be a significant liability for any business. For utilities, it is uniquely irreparable. The conventional rule that monetary harm is rarely irreparable to private businesses rests on a premise that does not hold in the utility context: that money is fungible and a subsequent damages award can make a party whole. That premise collapses when the party is a public utility facing harm to its credit, which in turn threatens its ability to finance and carry out the reliable operation of critical transmission infrastructure. The Indicated NETOs depend on credit to operate, and that credit is now at risk.

A. Because The Public Interest Favors A Functioning Electric Grid, Utilities Are Irreparably Harmed When The Government Prevents Them From Fulfilling Their Public Service Obligation

Utilities are not just "any litigant," and an order of $1.5 billion is not just "any agency order." Opp. at 22, 36. The retroactive refund obligation will drive the Indicated NETOs below established credit thresholds, harming their access to capital and forcing them to delay infrastructure investment and other commitments essential to their operations. And these operations—maintaining a functional electric grid—directly impact customers and the public interest.

Because they are "'bound to serve all customers alike, without discrimination,'" utilities—like all common carriers—are placed "into a category distinct from other companies and closer to some functions, like the postal service, that the State has traditionally undertaken." *Cf. Biden v. Knight First Amend. Inst. at Columbia Univ.*, 141 S. Ct. 1220, 1223 (mem) (2021) (Thomas, J., concurring) (quoting *Primrose v. Western Union Telegraph Co.*, 154 U.S. 1, 14 (1894)). Utilities provide essential services to the public. *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 542 (1985) (citing *Brush v. Commissioner*, 300 U.S. 352, 370– 73 (1937)). They can exercise delegated governmental authority.

3

*PennEast Pipeline Co., LLC v. New Jersey*, 594 U.S. 482, 488 (2021) (federal government can and has delegated to pipeline companies authority to condemn necessary rights-of-way), *accord* 16 U.S.C. § 824p(e)(1) (identical language for transmission-line owners).  Utilities have an interest in public services because they perform public services. For that reason, just as the government suffers irreparable harm when it cannot "effectuat[e] statutes enacted by representatives of its people," utilities suffer irreparable harm where they cannot effectuate their public services.  *Cf. Trump v. CASA, Inc.*, 606 U.S. 831, 860 (2025) (quoting *Maryland v. King*, 567 U.S. 1301, 1302 (2012) (Roberts, C.J., in chambers)).

Unlike regular businesses that set prices freely, utilities enter a "regulatory compact" with FERC, in which they "accept[] lower rates of return on their investment in exchange for the certainty of regulated rates and resulting ability to recover prudently incurred costs." *Transmission Access Pol'y Grp. v. FERC*, 225 F.3d 667, 700 (D.C. Cir. 2000).  This compact depends on FERC acting as a predictable and even-handed regulator that sets rates prospectively in accordance with the Federal Power Act (FPA).  When FERC fails to act promptly and

4

coherently and instead orders refunds on a 12-year retroactive basis, it undermines the stability and certainty on which utilities—and the regulatory system itself—depend.

To preserve the regulatory compact, the Constitution guarantees a utility a return on its investment "sufficient to assure confidence in the financial integrity of the enterprise, so as *to maintain its credit* and to attract capital." *Fed. Power Comm'n v. Hope Nat. Gas Co.*, 320 U.S. 591, 603 (1944) (emphasis added). Anything lower is unconstitutionally "confiscatory." *Bluefield Waterworks & Imp. Co. v. Pub. Serv. Comm'n of W. Va.*, 262 U.S. 679, 690 (1923).

Because *Hope* and *Bluefield* require that regulated utilities maintain creditworthiness sufficient to attract capital, an agency action that degrades creditworthiness inflicts irreparable harm by destroying the financial conditions the Constitution itself requires. It is impossible to make a determination that a rate maintains the Indicated NETOs' creditworthiness when a 12-year retrospective refund liability

5

irreparably—and unlawfully—lowers that maintenance level. Harm to a utility's creditworthiness, then, is uniquely irreparable.[1]

*Hope* and *Bluefield* stand for a principle entwined with the public interest: that a utility is entitled to maintain the financial conditions that allow it to discharge its public duties. Judicial relief is required when FERC imposes a massive liability that irreparably destroys those conditions. FERC's Opposition insists that judicial relief here is unnecessary because it extended its 30-day deadline. But the partial extension has no bearing on irreparable harm to the Indicated NETOs' ability to attract capital.

FERC also asserts that its extension—granted after the Indicated NETOs sought relief from this Court—relieved any urgency because "the Owners have no obligation to pay refunds pursuant to Opinion 594 until May 20, 2027." Opp. at 12; *see also id.* at 2, 17, 21. FERC's newly

---

[1] FERC has ordered refunds based on an ROE that is only minimally higher than the one it earlier found to be too low to satisfy constitutional requirements. In Opinion No. 531, FERC found that an ROE of 9.39% was too low to satisfy the requirements of *Hope* and *Bluefield. Coakley v. Bangor Hydro-Elec. Co.*, Opinion No. 531, 147 FERC ¶ 61,234 at P 142 (2014). Using the same set of market data, in Opinion No. 594, it set the ROE at 9.57% and ordered refunds based on this ROE. *Coakley v. Bangor Hydro-Elec. Co.*, Opinion No. 594, 194 FERC ¶ 61,208 at PP 70, 464–67, ordering para. (A) (2026). FERC offered no explanation of why an ROE only 18 basis points higher met the minimum constitutional standard, nor how it could possibly represent a "midpoint" value of potentially just and reasonable ROEs.

6

articulated clarification might lessen the irreparable harm associated with immediate rolling payments, but it does not eliminate the core harm: the ten-figure retroactive refund obligation threatens the Indicated NETOs' creditworthiness. That harm is irreparable.

FERC chides the Indicated NETOs for their supposed "insouciance" about the public interest. *See* Opp. at 32. But it disregards that the public interest is maintained by a statutory scheme that protects both public utilities and their customers. When refund obligations impair the Indicated NETOs' access to capital, the consequences fall directly on customers in the form of rate whiplash—sharp and destabilizing swings driven by elevated borrowing costs that must ultimately be recovered in rates. Pet. at 26. Moreover, the public itself has a strong interest in a functional electric grid. Congress expressly found that "the business of transmitting and selling electric energy for ultimate distribution to the public is affected with a public interest." 16 U.S.C. § 824(a).

The public interest is not blindly in favor of lower rates. Congress recognized this when it limited FERC's refund authority to a 15-month period after a refund effective date and expressly directed FERC to "act as speedily as possible." 16 U.S.C. § 824e(b). The time limitation and

7

directive to act quickly made explicit what Congress, FERC, and the energy industry already knew: "a utility's financial viability and ability to service customers might be jeopardized if huge refunds were ordered." H.R. Rep. No. 100-384 at 8 (1987). Section 206(b)'s 15-month limit is meaningless if FERC can use boundless error-correction authority to "financially ruin[]" utilities with "large retrospective awards." Hearings on S. 1567 & H.R. 2858 at 26 (Nov. 18, 1987) (statement of Rep. Terry L. Bruce). Where, as here, a refund liability reaches such extraordinary magnitude that it creates a serious and imminent risk to credit, the injury is not merely financial—it undermines the utilities' ability to fulfill their public functions.

FERC could have avoided this uncertainty—and the need for judicial intervention—by acting with the consistency, transparency, and timeliness required by the governing statutory and constitutional framework. Here, the statutory provision at issue, Section 206(b), expressly directs FERC to act with expedition for the very reason that public utilities need financial certainty.

8

### B. FERC's Delay Created The Indicated NETOs' Irreparable Harm

FERC waited nearly a decade to respond to this Court's decision in *Emera Maine v. FERC*, 854 F.3d 9 (D.C. Cir. 2017). FERC's delay transformed what could have been a short-term monetary harm into irreparable harm to the Indicated NETOs' creditworthiness and a threat to their ability to fulfill their statutory obligations. During that time, FERC allowed the NETOs' refund exposure to balloon.

FERC attempts to justify its decade-long delay by invoking this Court's 2022 decision in *MISO Transmission Owners v. FERC*, 45 F.4th 248 (D.C. Cir. 2022), concerning the methodology for calculating returns. But the 2022 *MISO* decision did not prevent FERC from timely responding to *Emera Maine*. The delay reflects agency choice, not necessity, and cannot justify the expanded retroactive liability FERC now seeks to impose.

The Court has called far shorter delays "egregious." *In re Core Comm'ns, Inc.*, 531 F.3d 849, 850 (D.C. Cir. 2008) (six-year delay). FERC waited **nine years** to respond to *Emera Maine*, which vacated an order involving a statutory provision that demands prompt action. FERC now attempts to backdate its remand response to the date of the order

9

vacated. FERC treats *Emera Maine* like a remand without vacatur, as though its defective Section 206 step-one finding remained in effect across the refund period and, for nine years, FERC achieved "an indefinite stay of the effectiveness of this court's decision." *In re Core Comm'ns*, 531 F.3d at 862 (Griffith, J., concurring) (quoting *Natural Res. Def. Council v. EPA*, 489 F.3d 1250, 1262–64 (D.C. Cir. 2007) (Randolph, J., concurring)).

C.    **FERC's Response Demonstrates Its Failure To Abide By The Statutory Scheme**

FERC compounds its error by claiming the refunds merely return excess charges to customers. That premise is flawed and demonstrates that FERC's actions have undermined the statutory scheme. It assumes that, absent FERC's delay, the NETOs would have left the ROE established in Opinion No. 594 and backdated to 2014 unchanged for more than a decade. But the FPA guarantees utilities the right to seek rate increases under Section 205—a right the NETOs have now exercised but could not for almost a decade while waiting for FERC. By now retroactively imposing a static, below-market ROE, FERC completely undermined those Section 205 rights and denied the NETOs the opportunity to obtain lawful, forward-looking relief during the period of

delay. FERC's prolonged inaction followed by its decision to backdate a new ROE to 2014 changed the NETOs' baseline for a twelve-year period without providing them with an opportunity to exercise their Section 205 rights.[2]   The resulting refunds therefore do not reflect genuine "overcollections," but retroactive ratemaking untethered to the statutory scheme.

FERC thus tries to enforce ex post a rate that it did not set ex ante. The law does not tolerate such "enforcement-by-surprise." *Coinbase, Inc. v. SEC*, 126 F.4th 175, 215 (3d Cir. 2025) (Bibas, J., concurring). "[R]egulated parties should know what is required of them so they may act accordingly . . . ." *FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 253 (2012). Courts have repeatedly condemned self-serving delay. *Allegheny Def. Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) (en banc); *In re Core Comm'ns, Inc.*, 531 F.3d 849; *Prometheus Radio Project v. FCC*, 824 F.3d 33 (3d Cir. 2016); *Ctr. for Food Safety v. Regan*, 56 F.4th 648 (9th Cir. 2022).

---

[2] To the extent other ROEs were just and reasonable during the retroactive refund period, FERC's delay foreclosed the NETOs from exercising their Section 205 filing rights and, thus, their lawful right to charge a just and reasonable rate. *Atlantic City Elec. Co. v. FERC*, 295 F.3d 1, 11 (D.C. Cir. 2002).

11

FERC's delay here directly magnified the Indicated NETOs' financial exposure—by extending the refund period well beyond Section 206(b)'s 15-month limit, by allowing interest to accrue, and by retroactively setting a rate that the NETOs could have otherwise changed by exercising their Section 205 rights. That delay transformed ordinary monetary harm into irreparable harm to the Indicated NETOs' creditworthiness and financial health.

## II. ONLY A STAY PRESERVES THE STATUS QUO AND PREVENTS IRREPARABLE HARM

A stay preserves the status quo. *Nken v. Holder*, 556 U.S. 418, 429 (2009). The partial extension is a procedural accommodation that does not. FERC acknowledged as much when it partially granted the NETOs' extension request but denied their stay motion. *See Coakley v. Bangor Hydro-Elec. Co.*, Notice of Extension of Time, Docket Nos. EL11-66 (FERC Apr. 14, 2026); *Coakley v. Bangor Hydro-Elec. Co.*, Order Denying Mot. for Stay, 195 FERC ¶ 61,108 (May 13, 2026). The partial extension does not alleviate the irreparable harm, nor does it diminish the need for this Court's relief.

The partial extension does not eliminate the need to raise and carry a massive, unplanned financial liability on their balance sheets,

12

constraining borrowing capacity, pressuring credit metrics, and increasing financing costs. Pet. at 3, 16. The retroactive refund obligation would still force the Indicated NETOs to delay planned capital projects and put essential infrastructure investments on hold. Pet. at 15–16. The retroactive refund obligation would still damage the Indicated NETOs' credit metrics by pushing their operation-funds-to-debt ratios below established downgrade thresholds. Pet. at 13–14, 17–18. The retroactive refund obligation would still dilute the interests of existing shareholders by forcing the Indicated NETOs to raise substantial capital to fund their operations while their share prices are depressed. Pet. at 14–15. The partial extension does not relieve the Indicated NETOs of any of these harms. It merely postpones payment, all the while the NETOs must operate under the crushing cloud of a billion-dollar liability.

## III. FERC LACKS THE AUTHORITY TO ORDER RETROACTIVE REFUNDS

The Indicated NETOs remain likely to succeed on the merits. The retroactive refund obligation is well beyond the statute's strict 15-month refund limit and FERC's authority to correct its legal errors. Because FERC did not make a prerequisite finding under Section 206 that the

13

existing rate is unjust and unreasonable, it cannot backdate that rate change.

### A.    *Emera Maine* Did Not Identify A Legal Error That Can Be "Corrected" By Retroactive Refunds

Failing to fix a rate under Section 206 does not constitute a correctible legal error. *Office of Consumers' Couns., State of Ohio v. FERC*, 826 F.2d 1136, 1139 (D.C. Cir. 1987) (characterizing FERC's failure to fix a rate under Section 206 as an action that "involves no issue of legal error by the Commission"). FERC does not "fix" a rate until the rate is "numerically 'specified.'" *City of Anaheim v. FERC*, 558 F.3d 521, 524 (D.C. Cir. 2009) (Kavanaugh, J.) (quoting *Electrical Dist. No. 1 v. FERC*, 774 F.2d 490, 492 (D.C. Cir. 1985) (Scalia, J.)). That happens in step two.

To invoke Section 206 step-two power to fix a rate, there must be the prerequisite step-one finding. FERC's Opposition omits this critical context from *Emera Maine*. FERC states that "[a]mong other things, the Court agreed with Consumers that FERC failed to adequately show that the 10.57% Return . . . was, in fact, 'just and reasonable.'" Opp. at 4–5 (quoting *Emera Maine*, 854 F.3d at 27). One of the omitted "other things" prevents FERC from issuing the retroactive refunds here: FERC "never

actually explained how the existing ROE was unjust and unreasonable." *Emera Maine*, 854 F.3d at 26.  Without that prerequisite, FERC has no authority to set a new rate under Section 206 of the FPA.  *Ibid.*

Because *Emera Maine* held that FERC did not make a step-one finding, 854 F.3d at 26, FERC had no step-two authority in 2014 to fix *any* new rate, let alone the rate it now attempts to backdate.  Until it satisfies step-one, FERC cannot lawfully change the rate.  And when it does, that rate can be set only prospectively.  16 U.S.C. § 824e(a).

### B.    Even If There Was A Legal Error, The Refunds Go Beyond FERC's Authority To Correct It

When FERC commits a legal error, "the proper remedy is one that puts the parties in the position they would have been in had the error not been made." *Public Util. Comm'n of State of Cal. v. FERC*, 988 F.2d 154, 168 (D.C. Cir. 1993).  That did not happen here.  Even assuming, incorrectly, that FERC's failure to fix a rate was a correctible legal error, FERC has not put parties in the position they would have been but for the error.  The rate FERC seeks to impose is completely different—and significantly lower—than the rate contemplated by the orders vacated by *Emera Maine*.

## C.    No Other Authority Justifies The Refunds

Opinion No. 594 did not invoke Section 309 of the FPA, so FERC cannot use it as *post hoc* justification.  *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69 (1962); *Center for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 146 F.4th 1144, 1167 (D.C. Cir. 2025).  Even if FERC had attempted to justify its remedy by Section 309, that authority is limited and "cannot be used to supersede specific statutory strictures."  *TNA Merch. Projects, Inc. v. FERC*, 857 F.3d 354, 359 (D.C. Cir. 2017).  There is a "specific statutory stricture"—Section 206(b) of the FPA, 16 U.S.C. § 824e(b)—that limits FERC's authority to issue retroactive refunds to 15 months after a refund effective date.  The 137-month retroactive refund period is well beyond that.

In *MISO Transmission Owners v. FERC*, Docket Nos. 25-1045 *et al.*, the Court was asked to clarify FERC's authority under Section 206(b).  Instead of waiting for the Court's forthcoming decision, FERC issued Opinion No. 594 two days after oral arguments and now risks further avoidable litigation if the Court invalidates the same flawed refund theory on which Opinion No. 594 is based.  This case, however, differs in an important respect from *MISO*—the Court in *Emera Maine* vacated

16

FERC's previous attempt to make a prerequisite step-one finding, and FERC did not attempt another until Opinion No. 594. There was no lawful step-one finding in 2014, so FERC cannot backdate its new rate to that date. FERC rests its retroactive ratemaking on a purported step-one finding that did not exist in 2014.

## IV.    CIRCUIT RULE 18 DOES NOT BAR THE PETITION

FERC claims that the Petition violates the Court's rules because the Indicated NETOs, after waiting nearly a decade for FERC to even consider their arguments, did not wait for FERC's ruling on their stay motion before filing the Petition. Not so.

The Court's rules require the Indicated NETOs only to "state that, a motion having been made, the agency denied the motion *or failed to afford the relief requested.*" Fed. R. App. P. 18(a)(2)(A)(ii) (emphasis added); *see also* D.C. Cir. R. 18(a)(1). As the Petition made clear, FERC failed to afford the relief requested by the Indicated NETOs' stay motion. Pet. at 4. The motion asked FERC to stay the refund obligation by April 13, 2026.[3] Pet., Ex. B. The Indicated NETOs gave FERC the full

---

[3] This deadline was selected to allow adequate time for judicial review before the expiration of FERC's initial 30-day timeline, and account for internal business timelines.

17

opportunity to rule on the motion within that time. But April 13 came and went without any action from FERC. At that point, FERC had effectively denied the motion and the Indicated NETOs reasonably concluded it would be impractical to wait for an inevitable formal denial. Indeed, FERC did not act on the stay motion until its May 13 denial—55 days after its original order. Because the Petition stated that FERC had failed to afford the Indicated NETOs with relief by the requested date, it is properly before the Court.

*    *    *

From the outset, the Commission displayed no sense of urgency, permitting the matter to linger for years, before imposing an abrupt and arbitrary timetable on the NETOs. FERC's partial extension merely resets the clock; it does not alleviate the harm. To be sure, FERC's representation that the Indicated NETOs owe nothing until May 20, 2027, loosens some pressure. But FERC declined the full extension the NETOs requested, and even under FERC's revised schedule, the prospect of arranging more than a billion dollars in retroactive refunds remains extraordinarily difficult, if not impossible, to accomplish in the extended period.

18

Absent relief from this Court, FERC's order continues to constrain financing, impair credit metrics, and forces deferral of critical infrastructure investments.  In that way, the harm flows not from the moment the clock expires, but from the continuing force of the obligation.  Given that history, the entity that allowed time to pass unchecked should not also be the one to dictate its sudden acceleration.  To preserve meaningful judicial review, the Court—not FERC—should hold the stopwatch.

Dated:  May 22, 2026

Respectfully submitted,

/s/ *Michelle S. Kallen*

Mary E. Grover
Colin Francis
EVERSOURCE ENERGY SERVICE CO.
247 Station Drive, SE100
Westwood, MA 02090
(781) 441-8696
mary.grover@eversource.com
colin.francis@eversource.com

Michelle S. Kallen
Richard L. Roberts
Shaun M. Boedicker
Karen Bruni
Michael Zschokke
STEPTOE LLP
1330 Connecticut Avenue NW
Washington, D.C.  20036
(202) 429-6415
MKallen@steptoe.com

*Counsel for Eversource Energy Service Company on behalf of The Connecticut Light and Power Company, NSTAR Electric*

19

*Company, and Public Service Company of New Hampshire*

Noelle M. Kinsch
**AVANGRID NETWORKS, INC.**
80 State Street, 12th Floor
Albany, NY  122207
(518) 461-6984
noelle.kinsch@avangrid.com

Catherine McCarthy
**BRACEWELL LLP**
2001 M Street, NW
Washington, DC 20036
(202) 828-5839
cathy.mccarthy@bracewell.com

*Counsel for Central Maine Power Company and The United Illuminating Company*

20

## CERTIFICATE OF COMPLIANCE

I, Michelle S. Kallen, counsel for Eversource Energy Service Company on behalf of The Connecticut Light and Power Company, NSTAR Electric Company, and Public Service Company of New Hampshire, hereby certify pursuant to Fed. R. App. P. 32(g) that this petition complies with the type-volume limitations of the Court's Order of April 22, 2026.  This motion was prepared in a proportionally space typeface using 14-point, Century font, and contains 3,684 words, excluding the parts of the document exempted by Fed. R. App. P. 21(d)(1).

Dated: May 22, 2026

/s/ *Michelle S. Kallen*
Michelle S. Kallen
**Steptoe LLP**
1330 Connecticut Avenue NW
Washington, D.C.  20036
(202) 429-6415
MKallen@steptoe.com

*Counsel for Eversource Energy Service Company on behalf of The Connecticut Light and Power Company, NSTAR Electric Company, and Public Service Company of New Hampshire*

## CERTIFICATE OF SERVICE

I hereby certify that, on May 22, 2026, I electronically filed the foregoing document with the United States Court of Appeals for the D.C. Circuit by using the CM/ECF system. I certify that the counsel of record for Appellees are registered as ECF Filers and that they will be served by the CM/ECF system.

/s/ *Michelle S. Kallen*
Michelle S. Kallen
**Steptoe LLP**
1330 Connecticut Avenue NW
Washington, D.C. 20036
(202) 429-6415
MKallen@steptoe.com

*Counsel for Eversource Energy Service Company on behalf of The Connecticut Light and Power Company, NSTAR Electric Company, and Public Service Company of New Hampshire*