FEDERAL ENERGY REGULATORY COMMISSION
WASHINGTON, D.C.   20426

June 8, 2026

**Via ECF**

Mr. Clifton Cislak
Clerk of the Court
United States Court of Appeals for
  the District of Columbia Circuit
E. Barrett Prettyman United States Courthouse
333 Constitution Avenue, N.W.
Washington, DC  20001

> **Re:**  *In re Central Maine Power Co.*, No. 26-1086 (briefing on All Writs Act
> petition completed on May 22, 2026) – Rule 28(j) Supplemental Authority

Dear Mr. Cislak:

In *MISO Transmission Owners v. FERC*, No. 25-1045, Slip op. (D.C. Cir. June 5, 2026), this Court held that the Federal Energy Regulatory Commission was "eminently reasonable" in backdating a return-on-equity ("Return") rate determination given that FERC was responding to this Court's finding of legal error.  Slip op. 20–23.  That holding independently defeats Petitioners' extraordinary All Writs Act petition for a stay of agency action: Petitioners fail to make a strong showing that they are likely to succeed on the merits of their retroactive ratemaking claim.

In both *MISO Transmission Owners* and this matter the Commission established, pursuant to Section 206 of the Federal Power Act (16 U.S.C. §824e), a new Return. *Compare* FERC Opp. 4, *with* Slip op. 8; *see also* FERC Opp. 7 n.2 (the two agency proceedings are closely related).  In both matters this Court—in earlier appeals—rejected the FERC-set Return and vacated the underlying agency orders. *Compare* FERC Opp. 4–5 (discussing *Emera Me. v. FERC*, 854 F.3d 9 (D.C. Cir. 2017)), *with* Slip op. 9–11 (discussing *MISO Transmission Owners v. FERC*, 45 F.4th 248 (D.C. Cir. 2022)).  In both matters the Commission, on remand, established a new and lower just-and-reasonable Return, backdated that Return to the date it set the prior, judicially-rejected Return, and ordered transmission owners to pay commensurate refunds. *Compare* FERC Opp. 7–8, *with* Slip op. 21.  Petitioners in *MISO Transmission Owners* challenged FERC's backdating-and-refund determination as impermissibly retroactive.  This Court rejected that claim and affirmed the Commission's orders in all respects.  Slip op. 20–23, 35.

*MISO Transmission Owners* forecloses Petitioners' materially identical retroactive

ratemaking challenge in the matter on review.  That the two proceedings involve different regional market operators is irrelevant.  The contexts for the two proceedings are, at least for purposes of the retroactivity issue (*see* Pet. 20–24), materially indistinguishable.  Thus, not only have Petitioners failed to make a strong showing that they are likely to succeed on the merits of their retroactive ratemaking claim (as they must do to secure a stay (FERC Opp. 15–16)), that claim *affirmatively* lacks merit.

Respectfully submitted,

*/s/ Jared B. Fish*
Tel.:  (202) 502-8101
Jared.fish@ferc.gov

*Counsel for Respondent Federal Energy*
*    Regulatory Commission*

cc:    All Counsel

# ATTACHMENT

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued March 17, 2026                    Decided June 5, 2026

No. 25-1045

MISO TRANSMISSION OWNERS, ET AL.,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

NORRIS ELECTRIC COOPERATIVE, ET AL.,
INTERVENORS

———

Consolidated with 25-1066, 25-1069, 25-1115, 25-1124,
25-1126

———

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

———

*Christopher R. Jones* and *Ruth M. Porter* argued the causes for petitioners MISO Transmission Owners, et al. With them on the joint briefs were *C. Dixon Wallace, III*, *Wendy N. Reed*, and *Matthew J. Binette*. *Abraham F. Johns III* and *Anne K. Dailey* entered appearances.

2

*Dana M. Shelton* argued the causes for Customer petitioner. With her on the briefs were *Noel J. Darce* and *Justin A. Swaim*.

*Sean A. Atkins*, *Nicholas J. Cicale*, *Catherine McCarthy*, *Richard L. Roberts*, *Shaun M. Boedicker*, *Karen Bruni*, *Mary E. Grover*, *Colin Francis*, *S. Mark Sciarrotta*, *Steven M. Nadel*, *William M. Keyser*, *Jeffrey M. Jakubiak*, and *Melinda Warner* were on the brief for *amici curiae* in support of Transmission Owner petitioners.

*Jared B. Fish*, Senior Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *David L. Morenoff*, Deputy General Counsel, and *Robert H. Solomon*, Solicitor.

*Ruth M. Porter* argued the cause for intervenors MISO Transmission Owners in support of respondent. With her on the brief were *Wendy N. Reed* and *Matthew J. Binette*.

*Jeffrey M. Bayne* argued the cause for Customers intervenors in support of respondent. With him on the brief were *James K. Mitchell*, *Kenneth R. Stark*, *Matthew L. Garber*, *Gerit F. Hull*, *Jason T. Gray*, *Noel J. Darce*, *Dana M. Shelton*, *Justin A. Swaim*, *Stephen C. Pearson*, *David E. Pomper*, *Michael R. Postar*, *Bhaveeta K. Mody*, *Andrea I. Sarmentero Garzon*, *Kevin M. Kurzeja*, *Katherine Ann Wade*, and *James H. Holt*.

Before: PAN and GARCIA, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

3

EDWARDS, *Senior Circuit Judge*: The petitions for review in this case involve claims raised by two petitioners challenging actions taken by respondent Federal Energy Regulatory Commission ("FERC" or the "Commission"). The first petitioner includes a group of electric transmission companies ("Transmission Owners") doing business within the province of Midcontinent Independent System Operator, Inc. ("MISO"). MISO is a non-profit, independent organization that administers the interstate electric grid in the Midcontinent region on behalf of Transmission Owners. The second petitioner is Louisiana Public Service Commission ("LPSC"), one of many state regulatory commissions within the Midcontinent region that is overseen by MISO.

This case arises from a long-running dispute over one component of the rates charged by Transmission Owners to electricity customers. The disputed component, the return-on-equity ("Return"), reflects the rate Transmission Owners receive as compensation for their investments in MISO's transmission facilities. On November 12, 2013, a group of customers filed a complaint with FERC to contest MISO's Return as unlawful. That complaint argued that the Return violated FERC's obligation to ensure "just and reasonable" rates under the Federal Power Act ("FPA"). 16 U.S.C. §§ 824d(a), 824e(a). On February 12, 2015, a second set of customers filed a separate complaint with FERC challenging the same Return.

In *MISO Transmission Owners v. FERC*, 45 F.4th 248 (D.C. Cir. 2022), this court vacated FERC's initial series of orders issued in response to those complaints and remanded the case to FERC to "reopen proceedings." *Id.* at 265. Transmission Owners and LPSC now petition for review of the orders FERC issued on remand. Transmission Owners argue that in ordering retroactive refunds with interest for an eight-

4

year period, FERC ignored the limits on its authority under FPA section 206, 16 U.S.C. § 824e. Transmission Owners' principal claims are that FERC erred in (1) ordering Transmission Owners to pay years of refunds and interest beyond what the statute allows; and (2) entertaining a second complaint that transparently sought only to impermissibly extend the statutory 15-month limit on refunds under FPA section 206(b). LPSC, in turn, argues that FERC should have ordered Transmission Owners to pay more refunds than FERC deemed reasonable. For the reasons stated below, we deny in part and dismiss in part Transmission Owners' petitions for review, and we deny LPSC's petitions for review.

## I. BACKGROUND

### A. *Federal Power Act*

Historically, "power grids were run by 'vertically integrated monopolies.'" *NextEra Energy Res., LLC v. FERC*, 118 F.4th 361, 365 (D.C. Cir. 2024) (quoting *Midwest ISO Transmission Owners v. FERC*, 373 F.3d 1361, 1363 (D.C. Cir. 2004)). Under that model, a single company owned the facilities that generated electricity, transmitted it, and distributed it to customers. *See id.* "Utilities sold these services in bundled packages to customers in limited geographic areas." *Id.* By the mid-twentieth century, however, technological advances enabled new entrants to generate electricity at a lower cost. *See Atl. City Elec. Co. v. FERC*, 295 F.3d 1, 4 (D.C. Cir. 2002). Yet, those entrants were largely shut out of the market because "incumbent utilities used their control of transmission lines to keep competitors out of the market." *MISO Transmission Owners*, 45 F.4th at 253. "This practice resulted in artificially high electricity prices for consumers." *NextEra Energy*, 118 F.4th at 365.

5

In response, FERC undertook "a restructuring of the power industry." *Atl. City Elec.*, 295 F.3d at 4. As part of that effort, FERC "required utilities to provide open access to their transmission lines in a nondiscriminatory fashion." *Id.* At the same time, FERC encouraged the development of independent system operators, neutral entities charged with administering the grid on a nondiscriminatory basis. *See id.* at 5.

MISO is one such operator. It is responsible for impartially managing the transmission grid across the geographic region spanning from Louisiana to Minnesota and into Manitoba. *See MISO Transmission Owners*, 45 F.4th at 253. In return, it charges customers transmission rates designed to recover costs and provide transmission owners a reasonable return on their investment in transmission facilities. *Id.* This case concerns the latter component of that rate, the Return.

MISO's rates, including the Return, are subject to oversight under the Federal Power Act. *See id.*; *see also FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 266 (2016). The FPA requires FERC to ensure that all rates subject to its jurisdiction are "just and reasonable" and not "undu[ly] preferen[tial]." 16 U.S.C. § 824d(a)-(b). That mandate is implemented through two complementary provisions.

Section 205 permits utilities to propose new rates, which FERC reviews to determine whether they are lawful. *See id.* § 824d(d)-(e); *see also NRG Power Mktg., LLC v. FERC*, 862 F.3d 108, 114 (D.C. Cir. 2017).

This case arises under section 206, which authorizes FERC, upon complaint or on its own motion, to review and modify existing rates. *See* 16 U.S.C. § 824e. To do so, FERC must engage in a two-step inquiry. *See Emera Me. v. FERC*, 854 F.3d 9, 24 (D.C. Cir. 2017). First, FERC must determine

6

whether the existing rate is "unjust" or "unreasonable." 16 U.S.C. § 824e(a); *see also Emera Me.*, 854 F.3d at 24-25. Second, if FERC makes such a finding, then it must "determine the just and reasonable rate . . . to be thereafter observed and in force" and "fix" that rate "by order." 16 U.S.C. § 824e(a).

Section 206(a)'s command that the new rate be "thereafter observed" makes clear that FERC's ratemaking authority is prospective. FERC may correct unlawful rates going forward, but it generally may not revise rates already charged. *See City of Anaheim v. FERC*, 558 F.3d 521, 523-24 (D.C. Cir. 2009).

Section 206(b) provides a limited exception for retrospective monetary relief. That provision requires FERC, when it institutes a section 206 proceeding in response to the filing of a complaint, to establish a "refund effective date" that falls on, or within five months after, the filing of the complaint. 16 U.S.C. § 824e(b). If FERC later determines that the challenged rate is unlawfully high, it may, at the conclusion of the proceeding, "order refunds of any amounts paid . . . in excess of those which would have been paid under the just and reasonable rate" during the 15 months following the established refund effective date. *Id.*

Because the challenged rate remains in effect during the pendency of the proceeding, customers must continue to pay it. *See MISO Transmission Owners*, 45 F.4th at 253. The refund mechanism allows a limited period of retroactive relief to be granted. Section 206 strictly prohibits retroactive relief outside the 15-month refund window. As we have explained, "[r]efunds of any amounts paid outside of the refund period are forbidden." *Exxon Mobil Corp. v. FERC*, 571 F.3d 1208, 1215 (D.C. Cir. 2009) (internal quotation marks and citation omitted).

7

Section 206 therefore establishes a tightly constrained remedial scheme. On the one hand, FERC may not permit utilities to charge unjust or unreasonable rates. On the other, it may not require utilities to return funds already collected, except within the limited refund period authorized by section 206(b).

At the same time, the FPA confers a more general grant of authority that operates alongside those constraints. Section 309 authorizes FERC "to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders . . . as it may find necessary or appropriate to carry out the provisions of [the FPA]." 16 U.S.C. § 825h. This section "vests the Commission with broad remedial authority." *Xcel Energy Servs. Inc. v. FERC*, 815 F.3d 947, 954 (D.C. Cir. 2016).

But the authority under section 309 is not unbounded. Section 309 does not permit FERC to "contravene any terms of the [FPA]" and "cannot be used to supersede specific statutory strictures," *TNA Merch. Projects, Inc. v. FERC*, 857 F.3d 354, 359 (D.C. Cir. 2017) (citation omitted), such as those provided by section 206.

As this case shows, there are situations when section 206 and section 309 may be in tension. Petitioners have raised a legitimate claim here that FERC relied on its authority under section 309 in a way that appears inconsistent with the refund limitations imposed by section 206. FERC claims that, given the circumstances of this case, the two statutory provisions are not in conflict.

## B. *Facts and Procedural History*

We assume familiarity with the facts and procedural history of this case, as recounted in our prior opinion, *MISO*

8

*Transmission Owners v. FERC*, 45 F.4th 248 (D.C. Cir. 2022). We relate them only as relevant to the present case.

### 1. Initial Proceedings Before FERC

The petitions before the court arise from a protracted series of section 206 proceedings before FERC concerning the lawfulness of the return-on-equity rate administered by MISO. The proceedings began on November 12, 2013, when a group of customers filed a complaint ("First Complaint") under FPA section 206. The First Complaint challenged, in relevant part, the 12.38% Return paid to Transmission Owners as "unjust and unreasonable." Joint Appendix ("J.A.") 14 (capitalization altered); *see also* J.A. 11. FERC established hearing procedures before an Administrative Law Judge for the First Complaint and established a refund effective date of November 12, 2013. Before FERC resolved the First Complaint, however, a second complaint ("Second Complaint") raising related challenges to the same 12.38% Return was filed. FERC likewise set the Second Complaint for hearing and established a refund effective date of February 12, 2015.

On September 28, 2016, following a hearing and decision by an Administrative Law Judge, FERC issued Opinion 551, in which it resolved the First Complaint. *See Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, 156 FERC ¶ 61,234 (Sep. 28, 2016) ("Opinion 551"). There, FERC fixed a new "just and reasonable" Return of 10.32%. *Id.* ¶ 67, J.A. 882. It also ordered refunds, with interest, for the 15-month refund period from November 13, 2013 through February 11, 2015. Numerous parties sought rehearing of Opinion 551.

Before FERC ruled on the rehearing applications or the Second Complaint, this court issued *Emera Maine v. FERC*,

9

854 F.3d 9 (D.C. Cir. 2017). In *Emera Maine*, this court held that FERC had unlawfully collapsed section 206's required two-step inquiry by proceeding directly to the selection of a replacement rate without first determining whether the existing rate was unjust and unreasonable. *See* 854 F.3d at 26-27. It thus vacated the contested actions in Opinions 531, 531-A, and 531-B. *See id.* at 30. Because FERC had relied extensively on Opinion 531 in issuing Opinion 551, it decided to reopen the First Complaint proceeding.

In Opinion 569, issued on November 21, 2019, FERC granted rehearing in part of Opinion No. 551. *See Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, 169 FERC ¶ 61,129 (Nov. 21, 2019) ("Opinion 569"). Opinion 569 corrected the *Emera Maine* issue in the First Complaint proceeding. Accordingly, FERC applied the revised methodology and found the 12.38% Return to be unjust and unreasonable. It then established a new Return of 9.88% effective September 28, 2016, the date of Opinion 551. It ordered Transmission Owners to provide refunds for the 15-month refund period from November 12, 2013 through February 11, 2015 and also from the effective date of the relief, September 28, 2016, through the date of Opinion 569. Turning to the Second Complaint, FERC considered whether the newly-effective 9.88% Return set by the First Complaint proceeding was just and reasonable and found that it was. Accordingly, it dismissed the Second Complaint and ordered no refunds for the corresponding refund period.

Multiple parties sought rehearing of Opinion 569. On May 21, 2020, FERC issued Opinion 569-A, in which it granted in part the requests for rehearing. *See Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, 171 FERC ¶ 61,154 (May 21, 2020) ("Opinion 569-A"). There, FERC abandoned portions of the methodology adopted in

10

Opinion 569 and reintroduced a risk-premium model that it had previously rejected. FERC combined that risk-premium model with methodologies incorporated in Opinion 569 and used the resulting framework to derive a revised Return of 10.02% in the First Complaint proceeding. It again made the Return effective as of September 28, 2016, the date of Opinion 551, and ordered refunds from then through the date of Opinion 569-A. Additionally, FERC ordered refunds for the 15-month refund period from November 12, 2013 through February 11, 2015. With respect to the Second Complaint, FERC affirmed the results of Opinion 569 and again declined to order refunds.

Opinion 569-B, issued on November 19, 2020, corrected certain inputs to the risk-premium model but otherwise sustained the results of Opinion 569-A. *See Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, 173 FERC ¶ 61,159 (Nov. 19, 2020) ("Opinion 569-B").

### 2. This Court's 2022 Decision in *MISO Transmission Owners*

Transmission Owners and customer groups separately petitioned for review of Opinions 551, 569, 569-A, and 569-B, and those challenges were consolidated for review. In *MISO Transmission Owners*, decided August 2022, this court found that FERC's decision to reintroduce the risk-premium model in Opinion 569-A "after initially, and forcefully, rejecting it" in Opinion 569 was arbitrary and capricious under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2). 45 F.4th at 264. The court explained that although "FERC is . . . entitled to change its mind[,] . . . it must provide a 'reasoned explanation' for its decision," and "FERC failed to do that." *Id.* (citation omitted). The court added that "[b]ecause FERC adopted that significant portion of its model in an arbitrary and capricious fashion, the new Return produced by that model

11

cannot stand." *Id.* Thus, the court vacated all four orders and "remand[ed] for FERC to reopen proceedings." *Id.* at 265. It dismissed Transmission Owners' petition for review in light of the vacatur. *See id.*

In reaching its holding, the court rendered several additional determinations that are pertinent to the present proceeding. *First*, the court acknowledged that it is unlawful under *Emera Maine* for FERC to "fail[] to sufficiently explain why the existing rate [is] unjust and unreasonable at step one of the [s]ection 206 inquiry," *id.* at 261 (citing *Emera Me.*, 854 F.3d at 26-27), as FERC had done in Opinion 551. The court found that FERC appropriately responded to the error in Opinion 551 by subsequently adopting a new methodology "to more effectively verify that an existing rate is in fact unjust and unreasonable." *Id.*

*Second*, the court held that in resolving the Second Complaint, FERC had properly used the new Return set by the First Complaint proceeding rather than the Return in effect at the time the Second Complaint was filed. *See id.* at 262. The court explained that because "the [FPA] uses the present-tense verb 'is,' . . . FERC must look to the current Return at the time of decision." *Id.* It further emphasized that, under the FPA, FERC must "set a Return 'to be thereafter observed and in force.'" *Id.* Applying that mandate, the court reasoned that "[o]nce FERC sets a new Return in the first proceeding, it must observe and enforce that Return until it lawfully changes, including in ongoing proceedings." *Id.*

*Third*, the court found that FERC's decision to maintain an "imperfect correspondence" between "*unadjusted* betas in [a third party's] capital-asset formula" and "*adjusted* betas for [FERC's own] capital-asset formula" was reasonable "based on the evidence [FERC] had before it." *Id.* at 260 (citation

12

omitted). The court explained that FERC "had to choose between 'imperfect correspondence' and no size adjustment at all." *Id.* "That is the kind of technical choice to which we are 'particularly deferential,'" the court explained. *Id.* (quoting *Pub. Serv. Comm'n of Ky. v. FERC*, 397 F.3d 1004, 1006 (D.C. Cir. 2005)). Thus, the court found that FERC's decision to maintain the mismatch between the betas was not arbitrary and capricious. *See id.*

*Fourth*, based on the "same logic," the court "reject[ed] the challenge to FERC's decision to combine adjusted betas based on the New York Stock Exchange with an expected return based on the S&P 500." *Id.* The court accepted that "it would not be reasonable [for FERC] to calculate an expected return using all 2,800 companies in the New York Stock Exchange." *Id.* The court added that "no party provided adjusted betas from the appropriate time frame based on the S&P 500." *Id.* Thus, FERC had reasonably done "the best it could with the data it had." *Id.*

### 3. Remand and Rehearing Orders Following the Court's August 2022 Decision

Following the issuance of this court's decision in August 2022, FERC reconsidered the matters at issue and rendered a Remand Order on October 17, 2024. *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, 189 FERC ¶ 61,036 (Oct. 17, 2024) ("Remand Order"). In that order, FERC reversed aspects of the vacated orders criticized by this court while retaining portions that the court had either approved or left undisturbed. Applying the approved revised methodology, FERC undertook the two-step inquiry necessitated by section 206(a) of the Federal Power Act. At step one in the First Complaint proceeding, FERC concluded that the existing 12.38% Return was unjust and unreasonable.

13

Proceeding to step two, FERC determined that a just and reasonable replacement Return was 9.98%. FERC therefore ordered Transmission Owners to "provide refunds based on this 9.98% base [Return], with interest, for the First Complaint proceeding's 15-month refund period from November 12, 2013, through February 11, 2015, and for the period from September 28, 2016, to the date of this order." *Id.* ¶ 33, J.A. 1799.

Turning to the Second Complaint, FERC noted that this court had "upheld the Commission's determinations to treat the [Return] to be analyzed under the first prong of section 206 in the Second Complaint as the [Return] that the Commission fixed as the replacement rate in the First Complaint, rather than the [Return] in effect at the time the Second Complaint was filed." *Id.* ¶ 34, J.A. 1799. Accordingly, it evaluated whether a 9.98% Return was unjust and unreasonable. FERC found that it was not. Accordingly, FERC declined to order refunds in the Second Complaint proceeding.

Transmission Owners and LPSC sought rehearing of the Remand Order. FERC sustained the results of the Remand Order in the Rehearing Order issued on March 25, 2025. *See Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, 190 FERC ¶ 61,184 (Mar. 25, 2025) ("Rehearing Order").

Beginning with LPSC's request for rehearing, FERC rejected LPSC's argument that "the Commission should correct the 'imperfect correspondence' in applying a size premium adjustment based on raw betas to a [capital asset pricing model] analysis that uses adjusted betas." *Id.* ¶ 36, J.A. 1921 (citation omitted). FERC explained that it had "found that, despite the difference, the size premium adjustment was still appropriate," and this court affirmed that approach in

14

*MISO Transmission Owners*. *Id.* ¶ 37, J.A. 1922. Next, FERC rejected LPSC's argument that FERC should match the New York Stock Exchange betas to the S&P 500 benchmark based on new evidence LPSC submitted in its request for rehearing. FERC explained that "[t]he Commission generally does not allow the introduction of new evidence at the rehearing stage of a proceeding." *Id.* ¶ 42, J.A. 1924. "[F]or the sake of clarity," FERC added that LPSC's proposed data was incomplete and reaffirmed that its existing methodology was reasonable. *Id.*, J.A. 1924-25. Last, FERC rejected LPSC's contention that FERC should have resolved the Second Complaint based on the 12.38% Return in effect during the relevant refund period. FERC explained that in *MISO Transmission Owners*, this court affirmed FERC's "approach of using the just and reasonable base [Return] established in the First Complaint as the existing rate to be analyzed in the Second Complaint." *Id.* ¶ 49, J.A. 1928. Thus, FERC reasoned that this court had rejected LPSC's argument, and so it did the same.

FERC then turned to Transmission Owners' request for rehearing. First, it rejected Transmission Owners' argument that FERC had erred by requiring refunds from September 28, 2016 through October 17, 2024, the date of the Remand Order. FERC explained that its approach "is just and reasonable because it is dictated by the procedural facts of this proceeding, and it is necessary to correct a legal error." *Id.* ¶ 53, J.A. 1930. FERC added that its approach is consistent with the authority provided to the Commission under section 309 of the FPA and does not run afoul of the 15-month refund limit established in section 206(b). FERC also rejected Transmission Owners' argument that FERC should have "dismiss[ed] the Second Complaint 'outright' as an unlawful extension of the [15]-month refund period in section 206." *Id.* ¶ 88, J.A. 1948 (citation omitted). FERC explained that it has permitted successive complaints where, as here, they rely on new and

15

more current financial data. Additionally, FERC noted that Transmission Owners' request was moot because FERC did not order refunds under the Second Complaint.

The following chart summarizes the relevant events.

| Date | Event | Relevant Details |
|---|---|---|
| **November 12, 2013** | **First Complaint** | • Challenged 12.38% Return as unjust and unreasonable<br><br>• Refund effective date: November 12, 2013 |
| **February 12, 2015** | **Second Complaint** | • Challenged 12.38% Return as unjust and unreasonable<br><br>• Refund effective date: February 12, 2015 |
| **September 28, 2016** | **Opinion 551** | <u>First Complaint Proceeding</u><br>• New Return = 10.32%<br><br>• Effective date of relief: September 28, 2016<br><br>• Refund period: November 13, 2013 – February 11, 2015<br><br><u>Second Complaint Proceeding</u><br>• Second Complaint not addressed in this opinion |
| **April 14, 2017** | ***Emera Maine v. FERC*, 854 F.3d 9 (D.C. Cir. 2017)** | • Vacated Opinion 531, on which Opinion 551 was based |

16

| November 21, 2019 | Opinion 569 | First Complaint Proceeding<br>• Step 1: 12.38% Return = unjust and unreasonable<br><br>• Step 2: New Return = 9.88%<br><br>• Effective date of relief: September 28, 2016 (ordered refunds from then through November 21, 2019)<br><br>• Refund period: November 12, 2013 – February 11, 2015<br><br>Second Complaint Proceeding<br>• Step 1: 9.88% Return = not unjust and unreasonable<br><br>• Dismissed Second Complaint<br><br>• No refunds ordered |
|---|---|---|
| May 21, 2020 | Opinion 569-A | First Complaint Proceeding<br>• Step 1: 12.38% Return = unjust and unreasonable<br><br>• Step 2: New Return = 10.02%<br><br>• Effective date of relief: September 28, 2016 (ordered refunds from then through May 21, 2020)<br><br>• Refund period: November 12, 2013 – February 11, 2015 |

17

| | | |
|---|---|---|
| | | Second Complaint Proceeding<br>• Step 1: 10.02% Return = not unjust and unreasonable<br><br>• Dismissed Second Complaint<br><br>• No refunds ordered |
| **November 19, 2020** | **Opinion 569-B** | • Sustained the results of Opinion 569-A and corrected certain inputs to Return methodology |
| **August 9, 2022** | ***MISO Transmission Owners v. FERC*, 45 F.4th 248 (D.C. Cir. 2022)** | • Vacated Opinions 551, 569, 569-A, and 569-B<br><br>• Remanded to FERC to reopen proceedings |
| **October 17, 2024** | **Remand Order** | First Complaint Proceeding<br>• Step 1: 12.38% Return = unjust and unreasonable<br><br>• Step 2: New Return = 9.98%<br><br>• Effective date of relief: September 28, 2016 (ordered refunds from then through October 17, 2024)<br><br>• Refund period: November 12, 2013 – February 11, 2015<br><br>Second Complaint Proceeding<br>• Step 1: 9.98% Return = not unjust and unreasonable |

18

| | | • Declined to establish a new Return<br><br>• No refunds ordered |
|---|---|---|
| **March 25, 2025** | **Rehearing Order** | • Sustained the results of the Remand Order |

Transmission Owners and LPSC timely petitioned for review of the Remand Order and Rehearing Order.

## II. ANALYSIS

### A. *Standard of Review*

Our review of FERC's orders under the APA proceeds along familiar lines. "In general, this court will set aside a decision [by FERC] only if it is arbitrary and capricious or otherwise contrary to law." *TNA Merch. Projects*, 857 F.3d at 358 (alteration in original) (internal quotation marks and citation omitted); *see also* 5 U.S.C. § 706(2)(A), (C). That inquiry is bounded by a basic principle: "FERC is a creature of statute" and possesses "*only* those authorities conferred upon it by Congress." *Atl. City Elec.*, 295 F.3d at 8 (citation omitted). "In the absence of statutory authorization for its act, an agency's action is plainly contrary to law and cannot stand." *Id.* (internal quotation marks and citation omitted).

In assessing whether FERC has acted within those bounds, this court "exercise[s] independent judgment" to reach "the best reading of the statute." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394, 400 (2024). Otherwise, this court "review[s] FERC's orders under the deferential arbitrary-and-capricious standard of review." *LSP Transmission Holdings II, LLC v. FERC*, 45 F.4th 979, 991 (D.C. Cir. 2022). "Under that

19

standard, we uphold FERC decisions if the agency has examined the relevant considerations and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Id.* (internal quotation marks and citation omitted). However, a FERC order will be set aside if it is "unreasonable[] or inadequately explained." *Id.* (citation omitted).

**B.  *Transmission Owners' Petitions for Review***

Transmission Owners petition for review of the Remand and Rehearing Orders under the APA. They first argue that FERC exceeded its statutory authority by backdating the effective date of the Return to September 28, 2016 and ordering refunds through October 17, 2024, contending that the Federal Power Act permits only prospective relief and limits refunds to a 15-month period. They also assert that FERC erred in permitting successive complaints challenging the same Return, thereby circumventing that same limitation.

Those arguments fail. First, FERC acted within its authority in backdating relief to align with the vacatur ordered in this court's 2022 decision in *MISO Transmission Owners*, which set aside the relevant Return determinations and authorized a commensurate remedy. Second, Transmission Owners have not established Article III standing to challenge FERC's consideration of a successive complaint, having failed to show redressability for one injury and imminence for the other. The petitions are therefore denied in part and dismissed in part.

20

### 1. FERC Lawfully Ordered Refunds from September 2016 to October 2024

Transmission Owners do not contest FERC's authority to order refunds for the 15-month period spanning from November 12, 2013 to February 11, 2015. After all, FPA section 206(b) expressly authorizes such relief. Rather, they challenge FERC's authority under FPA section 309 to retroactively apply the new Return effective September 28, 2016 and to order refunds from that date through October 17, 2024. In their view, such a retroactive remedy exceeds FERC's statutory authority under the FPA because section 206 authorizes only two forms of relief at the conclusion of a proceeding: (1) prospective rate adjustments under section 206(a); and (2) "retroactive refunds . . . under section 206(b), but only for the 15-month period from the refund effective date." Br. of Transmission Owners 14 (cleaned up).

As discussed above, Transmission Owners are generally correct. However, there is a clear exception in play in this case. Where, as here, FERC is "remedy[ing] its own errors after being reversed in court[,] . . . '[t]his court has . . . recognized FERC's authority to order retroactive rate adjustments.'" *City of Anaheim*, 558 F.3d at 525 (citation omitted). This exception applies in a section 206 case, even though it involves a "stricter set of procedures than section 205" of the FPA. *Id.* (cleaned up). Thus, we have observed that in a section 206 proceeding on remand from this court, FERC may "advanc[e] the 'effective date'" of a remedy to "cure" a defect identified by this court. *La. Pub. Serv. Comm'n v. FERC*, 866 F.3d 426, 430-31 (D.C. Cir. 2017) (citation omitted). In so finding, this court added that FERC has "ample authority to remedy its own errors after being reversed in court, *notwithstanding the prohibition on retroactive ratemaking.*" *Id.* at 431 (emphasis added). This authority is based in part on the concept that when FERC sets

21

a new rate that is subject to further review, the relevant stakeholders are "aware in advance of the risk of litigation-induced change" and thus on notice that "judicial invalidation of Commission decisions [could] result[] in retroactive changes in rates." *W. Deptford Energy, LLC v. FERC*, 766 F.3d 10, 22-23 (D.C. Cir. 2014).

This limited exception to the strictures of section 206 plainly applies to the present action. Here, FERC was responding to this court's August 2022 decision in *MISO Transmission Owners* when it backdated the effective date of the Return to September 28, 2016. As already explained, the court determined in *MISO Transmission Owners* that the Return set by Opinion 569-A was legally erroneous and vacated Opinions 551, 569, 569-A, and 569-B as a result. *See* 45 F.4th at 264. In so holding, the court also tacitly acknowledged a legal error in Opinion 551, the first opinion issued in the series, based on this court's earlier decision in *Emera Maine*. *See id.* at 255, 261.

Because this court invalidated both the initial and subsequent Return determinations, FERC reasonably backdated the effective date of the relief ordered to September 28, 2016, the date of Opinion 551, pursuant to its remedial authority under FPA section 309. Thus, the relief ordered aligns with the scope of the error identified by this court.

This result makes sense. An alternative approach would deprive FERC of the ability to give effect to judicial reversals and would undermine its statutory obligation to ensure just and reasonable rates. Additionally, "[w]ithout such corrective power, [regulated parties] would be substantially and irreparably injured by FERC errors, and judicial review would be powerless to protect them from much of the losses so

22

incurred." *TNA Merch. Projects*, 857 F.3d at 361 (second alteration in original) (citation omitted).

Transmission Owners' arguments to the contrary do not persuade us to depart from this clear precedent. For example, they claim that "FERC went far beyond 'responding to an adverse court decision' here when it decided in 2018 to re-open the hearing, take new evidence, [and] continue to 'fiddl[e]' with the [Return] until it finally issued Opinion 569-A." Reply Br. of Transmission Owners 13 (second alteration in original). But Transmission Owners identify no authority to support their claim that FERC was required to do the bare minimum to correct its errors. Nor does their argument account for the scope of this court's vacatur in *MISO Transmission Owners*. Because that decision vacated all four prior opinions in full, any alleged defects in FERC's intermediate steps are of no consequence here. The relevant inquiry for our purposes is whether FERC's ultimate remedy appropriately cures the errors identified by this court. We find that it does.

Additionally, although Transmission Owners mistakenly argue that FERC's order of refunds over the contested time period "finds no support in the statute and is thus *ultra vires*," Br. of Transmission Owners 14, they do not argue that the effective date selected by FERC was unreasonable. This is telling. As noted, FERC's action was within the bounds of section 309, which authorizes the agency "to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders . . . as it may find necessary or appropriate to carry out the provisions of [the FPA]." 16 U.S.C. § 825h. We are satisfied that the refund dates selected by FERC were both reasonable and consistent with established caselaw, and Transmission Owners suggest nothing to refute this conclusion.

23

This court has "ma[de] it clear that FERC enjoys broad authority when its past actions are determined to be wrong." *TNA Merch. Projects*, 857 F.3d at 361; *see also La. Pub. Serv. Comm'n*, 866 F.3d at 431 (explaining that FERC has "*ample* authority to remedy its own errors after being reversed in court" (emphasis added)). Thus, it was eminently reasonable for FERC to use its broad authority under section 309 to backdate the remedy to accord with the scope of *MISO Transmission Owners*' vacatur.

### 2. Transmission Owners Lack Standing to Challenge FERC's Consideration of the Second Complaint

Transmission Owners also argue that FERC erred in permitting serial complaints challenging the same Return. They insist that such successive complaints "circumvent the FPA's express [15]-month limit on refunds." Br. of Transmission Owners 37 (capitalization altered). "When petitioners seek direct review of agency action in our court, they 'bear[] the burden' of establishing their standing." *Entergy Ark., LLC v. FERC*, 134 F.4th 576, 580 (D.C. Cir. 2025) (alteration in original) (quoting *Twin Rivers Paper Co. LLC v. SEC*, 934 F.3d 607, 613 (D.C. Cir. 2019)). Transmission Owners have failed to make the requisite showing for this claim. Thus, we must dismiss it for lack of jurisdiction.

To establish Article III standing, a petitioner "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). FERC argues that Transmission Owners "suffer[ed] no concrete injury . . . from FERC's consideration of the Second Complaint" because the

24

Commission "dismissed that complaint" and "did not order *any* refunds stemming from the Second Complaint." Br. of FERC 65. Transmission Owners respond that they "were subjected to the costs and burdens of defending against an illegal successive complaint here and face the real threat of repeatedly being forced to do so in the future." Reply Br. of Transmission Owners 16. But Transmission Owners' first injury is concededly not redressable, and their second injury is concededly not imminent.

*First*, Transmission Owners claim injury from being "subjected to the costs and burdens of defending against an illegal successive complaint *here*." *Id.* (emphasis added). But, at Oral Argument, Transmission Owners' counsel represented that they are not requesting to be refunded for the costs and burdens already incurred from defending against the Second Complaint here. *See* Oral Argument at 35:00-36:30. Rather, counsel asserted that Transmission Owners seek an order from this court barring FERC's future consideration of successive complaints. *See id.* But they concede that such an order does nothing to redress the injury of having to defend against the Second Complaint *here*. *See id.* Thus, Transmission Owners make no argument that this injury is redressable. "[R]edressability is an 'irreducible' component of standing." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021) (quoting *Spokeo*, 578 U.S. at 338). Without it, Transmission Owners' theory of injury premised on the costs and burdens of defending against the Second Complaint here does not satisfy the requirements of Article III.

*Second*, Transmission Owners claim injury from "the real threat of repeatedly being forced to [defend against a successive complaint] in the future." Reply Br. of Transmission Owners 16. But Transmission Owners bear the burden of showing that this constitutes an injury that is

25

"concrete and particularized" and "actual or imminent." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). "[I]mminence" requires "that the injury is *certainly* impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Lujan*, 504 U.S. at 565 n.2). "Thus, [the Supreme Court] ha[s] repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Id.* (third alteration in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Transmission Owners fail to make the requisite showing. They claim there is a "real threat" that they will "repeatedly be[] forced" to "defend[] against an illegal successive complaint . . . in the future." Reply Br. of Transmission Owners 16. While it is, of course, *possible* that Transmission Owners will be called to defend against a successive complaint in the future, they offer no evidence that such injury is likely, much less *certainly impending*. *See Util. Workers Union of Am. Local 464 v. FERC*, 896 F.3d 573, 577 (D.C. Cir. 2018) ("Where, as here, a case comes to us on a petition directly from an agency, the petitioner[] . . . must support each element of its claim to standing by affidavit or other evidence, including whatever evidence the administrative record may already contain." (internal quotation marks and citation omitted)).

In sum, Transmission Owners fail to satisfy the court that the threat of having to defend against successive complaints is actual or imminent enough to satisfy the requirements of Article III standing. We thus must dismiss this claim for lack of jurisdiction.

26

## C. *Louisiana Public Service Commission's Petitions for Review*

LPSC also petitions for review of FERC's orders issued on remand. LPSC first argues that FERC acted contrary to law in relying on the 9.98% Return established in the First Complaint proceeding rather than the 12.38% Return in effect when the Second Complaint was filed. It also contends that FERC acted arbitrarily and capriciously in maintaining a mismatch in beta inputs and in rejecting additional data LPSC submitted on remand. LPSC has standing to press its claims, but the claims lack merit.

LPSC's challenge to FERC's use of the 9.98% Return is foreclosed by the law-of-the-case doctrine. The court's decision in *MISO Transmission Owners* makes it clear that FERC must apply the Return in effect at the time of decision, including in related proceedings. That same decision also bars LPSC's renewed attack on FERC's use of "mismatched" betas, which *MISO Transmission Owners* upheld as a reasonable technical judgment. Finally, FERC reasonably declined to consider LPSC's newly submitted data because it was introduced too late in the proceedings. Accordingly, we deny LPSC's petitions for review.

### 1. LPSC Established Its Standing

As a threshold matter, FERC challenges LPSC's standing to press its claims. But, as LPSC makes obvious and irrefutable, it has Article III standing because its customers are directly subject to the rates established by the challenged orders.

As discussed, a petitioner "seek[ing] direct review of agency action in our court . . . bear[s] the burden of establishing

27

[its] standing." *Entergy Ark.*, 134 F.4th at 580 (internal quotation marks and citation omitted). Because "ordinary rules of forfeiture apply to standing," arguments "raised for the first time in reply" are generally forfeited. *Id.* at 581 (quoting *Twin Rivers*, 934 F.3d at 615). Accordingly, a petitioner must establish standing in its opening brief. *See Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002).

"We have 'codified' these principles in Circuit Rule 28(a)(7)." *Entergy Ark.*, 134 F.4th at 581 (citation omitted). The revised rule, effective August 11, 2025, requires a petitioner's opening brief to "set forth the basis for the claim of standing" and to include "arguments and cite evidence establishing by a 'substantial probability' the claim of standing." D.C. Cir. R. 28(a)(7) (2025) (citing *Sierra Club v. EPA*, 292 F.3d at 898).

We have, however, recognized limited exceptions to these rules. For example, we have permitted petitioners to cure deficiencies in a reply brief where the "reply brief fleshes out a timely raised theory of standing and also makes standing 'patently obvious and irrefutable.'" *Sierra Club v. U.S. DOE*, 107 F.4th 1012, 1015 (D.C. Cir. 2024) (quoting *Twin Rivers*, 934 F.3d at 614-15). Where standing is that clear, we may be assured "that the government suffered no prejudice from the lateness of the petitioner's showing." *Id.* Although the recent amendment to Rule 28(a)(7) eliminated one prior exception, it does not disturb this principle. *Cf. Entergy Ark.*, 134 F.4th at 582 n.3 (explaining that the amendment to Rule 28(a)(7) removed the textual predicate for a different and inapplicable exception). LPSC succeeds in establishing that its standing is "patently obvious and irrefutable" on reply.

The Federal Power Act permits "[a]ny party to a proceeding under this chapter aggrieved by an order issued by

28

the Commission in such proceeding" to obtain judicial review of that order. 16 U.S.C. § 825*l*(b). "In addition, a petitioner 'must satisfy the requirements of constitutional standing.'" *Miss. Valley Gas Co. v. FERC*, 68 F.3d 503, 507 (D.C. Cir. 1995) (citation omitted). "Both of these thresholds require that [the petitioner] establish 'injury in fact' to a protected interest." *Id.* (citation omitted).

In its opening brief, LPSC explains that it was "aggrieved by orders issued by FERC because the orders that are the subject of the LPSC's petitions for review result in increased rates for certain LPSC-jurisdictional customers." Br. for LPSC 17. On reply, LPSC elaborates that the Return set by the Remand Order is an "inflated" rate and that "customers that pay a higher, unlawful rate suffer economic injury." Reply Br. for LPSC 4. LPSC adds that "[i]n a compliance filing to effectuate FERC Opinion Nos. [sic] 569-A and Opinion No. 569-B, the Transmission Owners provided FERC with revised . . . records" listing at least one LPSC customer as subject to the disputed rates. *Id.* at 5 (emphasis removed). LPSC adds that FERC accepted this filing. *See id.* at 5-6 (citing J.A. 1975-77). Thus, LPSC explains, its "standing is patently obvious." *Id.* at 4. We agree.

The FPA authorizes "[a]ny party . . . aggrieved" by a FERC order to seek judicial review, 16 U.S.C. § 825*l*(b), and LPSC readily meets that standard. So too does it satisfy the requirements of Article III injury-in-fact. The record shows that at least one LPSC-jurisdictional customer is subject to the Return set by the orders on review. Moreover, at oral argument, FERC's counsel did not doubt that any of LPSC's customers are, in fact, subject to the disputed rates.

We have found that "injury in fact" is "clearly demonstrated" where FERC orders challenged by the

29

petitioner "affect the rates it will pay . . . and are directly within the authority conferred upon FERC." *Miss. Valley Gas*, 68 F.3d at 508. Additionally, as discussed in greater detail below, LPSC raises essentially the same claims as the customer petitioners in *MISO Transmission Owners*. LPSC even argues substantially the same theory of standing as at least some of the customer petitioners. And, in *MISO Transmission Owners*, the court did not doubt any of the customers' standing. In fact, this court subsequently confirmed that *MISO Transmission Owners* "involved concrete, imminent harm[] because of . . . overcharges on rates." *Indus. Energy Consumers of Am. v. FERC*, 125 F.4th 1156, 1161-62 (D.C. Cir. 2025).

LPSC's injury is also indisputably "'fairly traceable' to the FERC orders, and not the result of independent choices by a party not before the [c]ourt." *Nw. Requirements Utils. v. FERC*, 798 F.3d 796, 806 (9th Cir. 2015) (citation omitted); *see also Lujan*, 504 U.S. at 560 (explaining the requirement that an injury "be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court" (cleaned up)). Last, LPSC "meets the remaining criterion for Article III standing because it is likely that its alleged injury could be redressed by a favorable decision from this court." *Miss. Valley Gas*, 68 F.3d at 508. Thus, we are satisfied that LPSC's standing is so "patently obvious and irrefutable . . . that [FERC] suffered no prejudice from the lateness of the petitioner's showing." *Sierra Club v. U.S. DOE*, 107 F.4th at 1015 (internal quotation marks and citation omitted). However, while LPSC has standing to press its claims, those claims all fail for the reasons discussed below.

30

### 2. Law-of-the-Case Bars LPSC's Challenge to FERC's Resolution of the Second Complaint

LPSC asserts that FERC unlawfully decided the Second Complaint based on the 9.98% Return produced in the First Complaint proceeding, rather than the 12.38% Return that was in effect when the Second Complaint was filed. However, the decision in *MISO Transmission Owners* resolved this precise question. LPSC's claim is thus barred by law-of-the-case doctrine.

The central premise of the law-of-the-case doctrine is that "the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc). Where, as here, "there is an appeal from the [agency's] judgment entered after remand, the decision on the first appeal establishes the law of the case to be followed on the second." *U.S. Off. of Pers. Mgmt. v. Fed. Lab. Rels. Auth.*, 905 F.2d 430, 434 (D.C. Cir. 1990) (citation omitted). In adopting such a rule, we explained that "an appellate court cannot efficiently perform its duty to provide expeditious justice to all if a question, once considered and decided by it were to be litigated anew in the same case upon any and every subsequent appeal." *Id.* (cleaned up). Such a rule "also discourages 'panel shopping' at the circuit level." *Id.* (citation omitted).

"The Supreme Court has instructed the lower courts to be 'loathe' to reconsider issues already decided 'in the absence of extraordinary circumstances such as where the initial decision was "clearly erroneous and would work a manifest injustice."'" *LaShawn A.*, 87 F.3d at 1393 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)). No such circumstances are present here, and, thus, we decline to reconsider the following issues.

31

Here, LPSC argues that FERC unlawfully decided the Second Complaint based on the 9.98% Return produced by the First Complaint proceeding, rather than the 12.38% Return that was in effect when the Second Complaint was filed. But, as discussed, the court in *MISO Transmission Owners* squarely rejected the same argument. The court held that FERC properly used the new Return established by the First Complaint proceeding to resolve the Second Complaint. *See MISO Transmission Owners*, 45 F.4th at 262. It explained that "[o]nce FERC sets a new Return in the first proceeding, it must observe and enforce that Return until it lawfully changes, including in ongoing proceedings." *Id.*

On remand, FERC followed that instruction. It thus resolved the Second Complaint using the Return "that the Commission fixed as the replacement rate in the First Complaint, rather than the [Return] in effect at the time the Second Complaint was filed." Remand Order ¶ 34, J.A. 1799. Applying that methodology, it found "that the 9.98% base [Return] established in the First Complaint proceeding ha[d] not been shown to be unjust and unreasonable." *Id.* ¶ 35, J.A. 1800. Accordingly, FERC concluded "that no refunds w[ould] be ordered in the Second Complaint proceeding." *Id.* ¶ 42, J.A. 1802.

LPSC seeks to relitigate FERC's methodology in resolving the Second Complaint. But because this issue was "already decided" and LPSC presents no "extraordinary circumstances" to compel our reconsideration, we decline to depart from *MISO Transmission Owners*' holding. *LaShawn A.*, 87 F.3d at 1393 (citation omitted). The prior panel resolved the issue, and FERC relied on its guidance in the Remand Order and Rehearing Order. To permit LPSC to relitigate this issue where no extraordinary circumstances are present would undoubtedly prevent this court from "efficiently perform[ing]

32

its duty to provide expeditious justice to all." *Off. of Pers. Mgmt.*, 905 F.2d at 434 (citation omitted).

### 3. Law-of-the-Case Bars LPSC's Challenge to FERC's Use of Mismatched Betas

LPSC next argues that FERC improperly maintained a "mismatch between betas used in the base capital-asset model and those applied in the size premium adjustment calculation" in the Remand Order, as affirmed by the Rehearing Order. Br. for LPSC 37 (capitalization altered). According to LPSC, this conceded "'imperfect correspondence' is inconsistent with the evidence, arbitrary, and should be remanded." *Id.* (quoting Rehearing Order ¶ 38, J.A. 1922). But that argument is foreclosed by this court's decision in *MISO Transmission Owners*, which upheld the same methodology that FERC employed here.

In Opinions 569, 569-A, and 569-B, FERC used adjusted betas in its base capital-asset pricing model while applying a size premium derived from unadjusted betas. The court in *MISO Transmission Owners* held that FERC's decision to maintain that "imperfect correspondence" was reasonable "based on the evidence [FERC] had before it." 45 F.4th at 260. Because FERC "had to choose between 'imperfect correspondence' and no size adjustment at all," the court deferred to FERC's judgment on that "kind of technical choice" and concluded that FERC's approach was not arbitrary and capricious under the APA. *Id.*

On remand, FERC declined to "make any changes to the [capital asset pricing model] analysis that was used in Opinion Nos. 569-A and 569-B." Remand Order ¶ 38, J.A. 1801. LPSC sought rehearing, asserting that the court in *MISO Transmission Owners* had "mistakenly concluded" the record

33

did not allow the mismatch to be corrected. J.A. 1865. It therefore directed FERC to data it claimed would eliminate the issue. FERC rejected LPSC's reading, explaining that the court did not assume a lack of evidence but instead upheld the Commission's judgment to retain the size adjustment despite the mismatch. *See* Rehearing Order ¶ 38, J.A. 1922. FERC further noted that the data LPSC invoked "was already in the record," and thus was before the court in *MISO Transmission Owners*. *Id.* ¶ 39, J.A. 1922-23. Accordingly, FERC found that LPSC "ha[d] not provided a reason for the Commission to reach a different determination" and declined to revisit the issue. *Id.*, J.A. 1923.

LPSC continues to press the matter before the court. But *MISO Transmission Owners* already upheld FERC's approach as reasonable on the record, and LPSC identifies no extraordinary circumstances that warrant our reconsideration. We, therefore, decline to revisit the issue under law-of-the-case doctrine.

LPSC responds that "*MISO* [*Transmission Owners*] . . . only decid[ed] that the use of the size premium adjustment was not unjust and unreasonable despite the imperfect correspondence," and not "whether the betas in the base capital-asset model should be corrected." Reply Br. for LPSC 21. But the court did not cabin its analysis so narrowly. Rather, it upheld FERC's decision to retain an "imperfect correspondence" after considering both the mismatch and whether it could be eliminated. By sustaining that approach, the court necessarily rejected any requirement for FERC to conform the betas.

LPSC "concedes" that if the court already considered that possibility, "the issue is likely barred." *Id.* Because we find that the court did engage in such consideration, we agree that

34

LPSC's challenge is foreclosed by the law-of-the-case doctrine.

### 4. FERC Reasonably Rejected LPSC's Late-Filed Evidence

Finally, LPSC contends that FERC acted arbitrarily and capriciously in rejecting its proposed S&P 500-based beta data, which it submitted on remand to address the evidentiary gap identified in *MISO Transmission Owners*. It argues that FERC's dismissal of that evidence was insufficiently reasoned and that FERC could not rely on procedural objections after choosing to address the submission.

Those arguments fail. FERC reasonably declined to consider LPSC's evidence because it was submitted too late. FERC explained that it "generally does not allow the introduction of new evidence at the rehearing stage of a proceeding, as it disrupts the administrative process and prevents other parties from responding." Rehearing Order ¶ 42, J.A. 1924. That approach is consistent with this court's precedent. We have held that FERC "has no obligation to consider new factual evidence that petitioners failed to submit prior to their petitions for rehearing." *Exxon Corp. v. FERC*, 114 F.3d 1252, 1260 (D.C. Cir. 1997). Because LPSC was aware of the relevant issues earlier in the proceedings, FERC acted within its discretion in refusing to reopen the record at the rehearing stage.

Given that dispositive ground, we need not address FERC's alternative rationale for rejecting the evidence. An agency does not forfeit a valid and independently sufficient ground by also explaining why the same evidence would fail on the merits. *See Salt River Project Agric. Improvement & Power Dist. v. United States*, 762 F.2d 1053, 1061 n.8 (D.C.

35

Cir. 1985) ("When it is clear that based on the valid findings the agency would have reached the same ultimate result, we do not improperly invade the administrative province by affirming."). Thus, FERC's decision to comment on the merits of the submission "for the sake of clarity" does not undermine its procedural ruling. Rehearing Order ¶ 42, J.A. 1924.

Accordingly, FERC's decision not to consider LPSC's late-filed evidence was not arbitrary or capricious.

## III. CONCLUSION

For the reasons stated above, we deny in part and dismiss in part Transmission Owners' petitions for review. Additionally, we deny LPSC's petitions for review.

*So ordered.*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on June 8, 2026.  Participants in the case will be served by the appellate CM/ECF system.

/s/ Jared B. Fish
Jared B. Fish
Senior Attorney

Federal Energy Regulatory Commission
Washington, DC 20426
Tel.: (202) 502-8101
E-mail: Jared.Fish@ferc.gov